### UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF NEW HAMPSHIRE

Jerome Moyston

     v.                                Civil No. 10-cv-030-PB

T. Gordon et al.

### REPORT AND RECOMMENDATION

Before the Court is Jerome Moyston's Complaint, construed to consist of the initial complaint (doc. no. 1), an addendum (doc. no. 4), and the exhibits thereto. See Fed. R. Civ. P. 10(c) (documents attached to pleadings shall be considered to be part of the pleadings for all purposes). Moyston filed this action while jailed at the Hillsborough County House of Corrections, awaiting trial on state criminal charges. Moyston's claims here relate to the jail's law library, grievance procedures, and mailroom practices. Defendants include Sgt. T. Gordon, a Hillsborough County Department of Corrections ("HCDOC") officer, and certain other HCDOC staff and administrators.[1] The matter is before me for preliminary review to determine, among other things, whether the Complaint (doc. nos. 1 and 4) states any claim upon which relief might be granted. See 28 U.S.C.

---

[1]In addition to Gordon, the defendants include S. Fournier, HCDOC hearings officer; Capt. Willie Scurry; James O'Mara, HCDOC Superintendent; David Dionne, HCDOC Assistant Superintendent; Cecile Beaudoin, HCDOC mailroom clerk; and Nancy Davine, HCDOC law library clerk.

§ 1915A(a); United States District Court, District of New
Hampshire, Local Rule ("LR") 4.3(d)(2).

Standard of Review

Under this Court's local rules, when an inmate commences an
action pro se and in forma pauperis, the Magistrate Judge
conducts a preliminary review.  LR 4.3(d)(2).  In conducting the
preliminary review, the Court construes all of the factual
assertions in the pro se pleadings liberally, however inartfully
pleaded.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per
curiam) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976), to
construe pro se pleadings liberally in favor of the pro se
party).  "The policy behind affording pro se plaintiffs liberal
interpretation is that if they present sufficient facts, the
court may intuit the correct cause of action, even if it was
imperfectly pled."  Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st
Cir. 1997); see also Castro v. United States, 540 U.S. 375, 381
(2003) (courts may construe pro se pleadings to avoid
inappropriately stringent rules and unnecessary dismissals).
This review ensures that pro se pleadings are given fair and
meaningful consideration.

To determine if a pro se complaint states any claim upon
which relief could be granted, the Court must consider whether
the complaint, construed liberally, Erickson, 551 U.S. at 94,
"contain[s] sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"
Ashcroft v. Iqbal, 556 U.S. ___, ___, 129 S. Ct. 1937, 1949
(2009) (citation omitted).  "A claim has facial plausibility when
the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for
the misconduct alleged."  Id.  Inferences reasonably drawn from
the plaintiff's factual allegations must be accepted as true, but
the Court is not bound to credit legal conclusions, labels, or
naked assertions, "devoid of 'further factual enhancement.'"  Id.
(citation omitted).  Determining if a complaint sufficiently
states such a claim for relief is a "context-specific task that
requires the reviewing court to draw on its judicial experience
and common sense."  Id. at 1950 (citation omitted).

Background

A.   Law Library

Pretrial detainees awaiting disposition of state criminal
charges may have access to the HCDOC law library.  At the
library, inmates may sign on to LEXIS for legal research.  While
he was represented in his criminal case by appointed counsel
prior to April 2009, Moyston's two regular library days were
Mondays and Wednesdays.

On April 2, 2009, Moyston appeared in state court on a
motion to proceed pro se in his criminal case.  The court granted
the motion, appointed standby counsel, and specifically ordered

3

that Moyston have "such access as he requires" to the HCDOC law library.  Ex. A to Compl. (doc. no. 1-1) at 3 (<u>State v. Moyston</u>, No. 09-S-107/111 (N.H. Super. Ct., Hillsborough-S. Dist., Apr. 2, 2009) "The defendant shall be allowed such access as he requires to the library at the Hillsborough County House of Corrections in order [to] prepare a defense to the pending charges.")).

A memorandum entitled "Pro Se Protocol for Law Library," dated April 29, 2009, sets forth procedures relating to Moyston's court-ordered law library access.  The memorandum, drafted by defendant HCDOC Capt. Willie Scurry, specifies, in pertinent part:

> 1.    Inmate Moyston . . . will continue his regular Law Library schedule which is Monday and Wednesday.  On these days, the access to LexisNexis will be proportionate to and subject to the needs of other inmates.  In addition, he will be allowed access to the Law Library for the use of LexisNexis on Friday[s] for an additional two (2) hours, on First Shift, where he will have sole access for view only. . . .
>
> 2.    Inmate Moyston will continue to be able to receive 25 copies per day of legal cases from the law books provided in the Law Library.  Inmate Moyston will need to provide an Inmate Request Form to Nancy Davine requesting these copies.
>
> . . .
>
> 4.    If at any time Inmate Moyston is found to be performing or conducting legal work for other than his case, while in the Law Library, it will be documented and his access will be concluded for that day.
>
> . . . .

Ex. C to Compl. (doc. no. 1-3).  Moyston refers to his extra
library access as his "Pro Se Protocol."

On May 7, 2009, Moyston submitted a request for a fourth day
of library time.  In his written request, Moyston stated that his
criminal case had come to a point where he needed more library
time, as he had numerous motions to file and needed time for
researching and typing motions.  Scurry denied the request for a
fourth day each week but allowed Moyston one-time permission to
use his Pro Se Protocol day on Friday, May 8, 2009, to type his
motions.  See Ex. B to Compl. (doc. no. 1-2).

On Tuesday, October 6, 2009, Moyston appeared at an HCDOC
disciplinary hearing on charges that appear unrelated to his use
of the library.  See Ex. E to Compl. (doc. no. 1-5).  Moyston
pleaded guilty to the charges.  Defendant S. Fournier, the
hearings officer, meted out a sanction consisting of "30 days
loss of law library excluding Pro Se Protocol until [Wednesday]
November 4, 2009."  The sanction included the notation that
Moyston would be "authorized access to law library via Inmate
Request Form."  Id.  Moyston chose not to file an appeal at the
time of the decision, but later changed his mind and, on October
8, 2009, filled out an inmate request to appeal the sanction.
HCDOC staff did not process that request as an appeal.

In an inmate request form dated October 19, 2009, Moyston
asserted that defendant Capt. Scurry sent a reply to Moyston's

inmate request dated October 9, 2009.  <u>See</u> Ex. D to Compl. (doc. no. 1-4).  Moyston has asserted that in that reply, Scurry promised to make up Moyston's missing law library days during the week of October 11, 2009, but that the promise was not fulfilled, and the time was not made up.  Moyston further noted that a hearing in his criminal case had been set for November 2, 2009, and that he needed extra library time to prepare.  Scurry failed to reply to Moyston's request for additional time prior to November 2, 2009.  Moyston asserts that because he did not receive extra library time prior to November 2, "one of my motions was denied."

On December 15, 2009, Moyston filled out a request for a copy of two state court cases in the law library.  Although the Pro Se Protocol allowed Moyston to have up to 25 copies of cases per day, defendant Nancy Davine replied to Moyston's copy request two days later, on Thursday, December 17, stating that Moyston could research those cases in the law library.  Moyston had access to the library on Friday, the following day.

In a letter dated January 7, 2010, Capt. Scurry denied Moyston's pending request for additional library time.  Scurry cited incidents involving Moyston in the library as the grounds for his decision, specifically, Moyston being found guilty on charges of being deceitful to HCDOC staff (February 11, 2009) and passing a note to another inmate (September 27, 2009).  In

addition, Scurry cited an incident on October 15, 2009, when an
HCDOC staff member concluded that Moyston was reading books and
viewing a non-law related website in the library instead of
conducting legal research, and an incident on December 17, 2009,
when, Scurry asserted, Moyston admitted he was doing work for
another inmate in the library.  See Ex. M to Compl. (doc. no. 1-
13).  Moyston disputes Scurry's assertions as to October 15 and
December 17.  Specifically, Moyston claims that he was looking at
LEXIS on October 15, and that he neither did, nor admitted to
doing, another inmate's work on December 17.  An unsworn
affidavit of the other inmate, Anthony Moscaritolo, states that
Moscaritolo told Scurry that Moyston did not prepare work for him
on that date.  See Ex. N to Compl. (doc. no. 1-14).

B.   Grievance Issues

On Friday, May 29, 2009, and Monday, June 1, 2009, Moyston
did not have access to the law library.  Scurry explained to
Moyston on May 29 that law library clerk Nancy Davine was out on
those days, and that Moyston would receive extra time the next
week to make up for the lost days.  On Tuesday, June 2, 2009,
Moyston filed a grievance about his missing library time.

The next day, June 3, 2009, Capt. Scurry charged Moyston
with a disciplinary infraction for allegedly abusing HCDOC
grievance procedures, based on Moyston's filing a grievance after
having been told that the library time would be made up the next

week.  Moyston was found guilty of abusing the grievance process
after a hearing on June 8, 2009.  See Ex. K to Compl. (doc. no.
1-11).

Defendant O'Mara, HCDOC Superintendent, signed a letter sent
to Moyston on June 8, 2009, stating that HCDOC employees would no
longer be required to respond to all of Moyston's grievances.
Citing the HCDOC Inmate Handbook on "Abuse of the Grievance
System," O'Mara stated that Moyston had filed more than 30
grievances between January and June 2009 and that there were 600
other inmates who required staff attention.  The letter concludes
as follows:  "Therefore, unless the grievance you submit involves
your personal safety, being in imminent danger, or you have an
unaddressed serious medical need, do not anticipate a response
from my staff."  Ex. G to Compl. (doc. no. 1-7).

On August 24, 2009, Moyston filed an inmate request, asking
for a grievance form, on which to grieve the mailroom's loss of
mail sent to him.  Citing O'Mara's June 8 letter, the HCDOC staff
member receiving the request denied it.  See Ex. F to Compl.
(doc. no. 1-6).

The upshot of Moyston's failed attempt to obtain a grievance
form to complain about a mailroom issue was that, on August 28,
2009, HCDOC Sgt. T. Gordon charged Moyston with disobeying a
staff member and abusing the grievance process.  The charges were
based on Gordon's view that O'Mara's letter said that unless the

grievance related to an unaddressed serious medical need, personal safety, or being in imminent danger, the grievance should not be filed.  Moyston pleaded "not guilty," contending that O'Mara's letter did not bar him from filing grievances.  The hearing officer, defendant Fournier, found Moyston guilty of the charges, accepting Gordon's interpretation of O'Mara's letter.  See Ex. I to Compl. (doc. no. 1-9).  Moyston's appeal was unsuccessful.  Ex. J. to Compl. (doc. no. 1-10).

C.   Mailroom

In March 2009, Moyston's family ordered two law books for him from Barnes and Noble, an on-line book dealer.  On March 24, 2009, without notifying Moyston, the mailroom at HCDOC rejected the first book because it was delivered by United Parcel Service ("UPS"), a private courier.  On March 31, 2009, the mailroom rejected the second book, sent by a third party book seller to fill an out-of-stock Barnes and Noble order.  Moyston received no notice of either book's rejection in March.

On April 8, 2009, Moyston filed an inmate request form inquiring about the books.  Cecile Beaudoin, a mailroom clerk, replied that the mailroom rejected the package received on March 24 because it was not sent through regular mail, as HCDOC regulations require, and that shipments from reputable bookstores need to be sent via the Postal Service.  See Ex. A to Addendum (doc. no. 4-1).

9

Moyston spoke with HCDOC Sgt. Brooks about the books' rejection, then filled out a second inmate request form complaining about the issue and requesting a grievance form.  In that inmate request form, Moyston asserted that Sgt. Brooks told him that the second book was rejected because it did not come from Barnes and Noble.  HCDOC Sgt. Brooks added his comments to Moyston's request, stating that he told Moyston that the mailroom does not accept packages from sources other than the Postal Service "or from book stores that we have not approved."  Ex. B. to Add. (doc. no. 4-2).

Moyston thereafter filed a grievance about the books' rejection.  See Ex. C to Addendum (doc. no. 4-3).  HCDOC Capt. Cusson recommended that the grievance be denied because the HCDOC Inmate Handbook states that packages delivered through private couriers will not be accepted; book sellers need only be "recognizable/verifiable"; and Moyston's claims of retaliation and discrimination were unfounded.  Id.  Defendant Assistant Superintendent David Dionne rejected the grievance, citing the same part of the Inmate Handbook as Cusson.  Id.

D.   Claims

In the Complaint (doc. nos. 1 & 4), Moyston has asserted the following claims under 42 U.S.C. § 1983[2]:

---

[2]The identification of the claims in the Report and Recommendation will be considered for all purposes in this case to be the claims raised in the Complaint.  If the plaintiff

1.   The application of an HCDOC rule, barring Moyston's receipt of a book sent via a private courier, violated Moyston's First Amendment rights.

2.   The mailroom's decision not to accept delivery of a book purchased from an online book dealer violated Moyston's First Amendment rights.

3.   Moyston suffered a deprivation of his First Amendment right to access the courts when he did not receive extra law library time.  Specifically, Moyston suffered harm, when, due to his restricted law library time prior to a hearing in his criminal case on November 2, 2009, the state court denied a motion filed by Moyston.

4.   Moyston suffered retaliation for exercising his First Amendment right to petition the government for a redress of grievances, in that Nancy Davine's denial of Moyston's request for copies of two state court cases was retaliatory for his filing a civil action against her.

5.   Moyston suffered retaliation for exercising his First Amendment right to petition the government for a redress of grievances, in that the sanction of loss of library time that Moyston received on October 6, 2009, for violating HCDOC rules, was retaliatory for Moyston's having filed a civil case against HCDOC.

6.   Moyston suffered retaliation for exercising his First Amendment right to petition the government for a redress of grievances, in that (a) the disciplinary charges, finding of guilty, and the sanction Moyston received in August 2009 was retaliatory for Moyston's attempt to grieve missing mail, and (b) the disciplinary charge, finding of guilty, and the sanction imposed against Moyston for abuse of the grievance process in June 2009 was retaliatory for Moyston having filed a grievance regarding his loss of library time.

---

disagrees with this identification of the claims, the plaintiff must file an objection thereto within fourteen (14) days of receipt of the Report and Recommendation, or the plaintiff must properly move to amend the Complaint.

7.    Moyston suffered a deprivation of his right to due
process in a prison disciplinary hearing in August
2009, in that the charges levied against him by
defendant Gordon were false.

8.    Superintendent O'Mara and Assistant Superintendent
Dionne are liable in their supervisory capacity for the
constitutional violations suffered by Moyston.

Discussion

I.    <u>Books (Claims 1 and 2)</u>

Moyston challenges the validity of HCDOC policies making the

Postal Service the sole, approved method of delivery of books,

and making publishers and certain types of book stores the sole,

approved source of books for inmates.  Moyston claims that the

policies violated his rights under the First and Fourteenth

Amendments.  The Inmate Handbook states that "[a]ny inmate

correspondence including newspapers, magazines and books must be

received from a publisher or bookstore via the U.S. Postal

Service.  Any inmate correspondence received from a private

courier or private mail agency will not be accepted."  Ex. C to

Add. Compl. (doc. no. 4-3).

When prison policies interfere with an inmate's

constitutionally protected rights, such regulations are valid

only if they are "reasonably related to legitimate penological

interests."  <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987).  A court,

in evaluating whether or not a particular prison regulation is

constitutional, considers four factors: (1) whether the

regulation has a "valid, rational connection" to a legitimate

12

penological objective, (2) "whether alternative means are open to
inmates to exercise the asserted right," (3) "what impact an
accommodation of the right would have on guards and inmates and
prison resources," and (4) "whether there are ready alternatives
to the regulation."  Overton v. Bazzetta, 539 U.S. 126, 132
(2003) (citing Turner, 482 U.S. at 89-91).  The Supreme Court has
"urged lower courts to exercise restraint and give appropriate
deference to the expert judgments of prison administrators."
Starr v. Coulombe, 2009 WL 224968, at *4 (D.N.H. Jan. 29, 2009)
(citing Turner, 482 U.S. at 84-85), aff'd, 368 Fed. Appx. 156
(1st Cir. 2010).  The analysis of the validity of administrative
restrictions affecting pretrial detainees is similar, although
one difference is that punishment for the underlying criminal
charge is never a legitimate purpose.  See Surprenant v. Rivas,
424 F.3d 5, 13 (1st Cir. 2005) (pretrial detainees are protected
from punishment by Fourteenth Amendment).

     A.   Private Courier (Claim 1)

     Here, the content-neutral policy of accepting shipments of
books only via the Postal Service is related to the legitimate,
non-punitive purposes of preserving security and promoting
administrative efficiency.  Private couriers may have differing
or nonexistent policies regarding the screening and acceptable
contents of correspondence.  The Postal Service's standards, in
contrast, are published and applied nationally.  Accepting

13

deliveries from private couriers would heighten the risks to prison security and increase the need for additional screening of inmate correspondence.  Cf. Bell, 441 U.S. at 550-51 (prison restriction limiting pretrial detainees' access to any hardbound books from sources other than publishers, bookstores, or book clubs was rationally related to legitimate purpose of maintaining prison security); Starr v. Coulombe, 368 Fed. Appx. at 158 (restriction in Bell was upheld in part because it was reasonably related to facility's legitimate interest in having staff avoid time-consuming searches of each page of incoming publications).

Furthermore, alternative means, other than private courier deliveries, are available for inmates to obtain the same books that they cannot obtain via private couriers.  They can receive Postal Service deliveries; Moyston's family resent one book via the Postal Service, and he received it.  Moyston does not allege that any book that he seeks to obtain cannot be shipped by a bookstore via the Postal Service.

As to the fourth factor, Moyston has failed to plead any facts showing that there are other policies accommodating his interest in receiving books sent by private couriers, which would have de minimis impact on the jail's valid, non-punitive institutional interests.  Accordingly, claim 1, relating to the validity of the policy barring the acceptance of private courier book deliveries, should be dismissed.

B.   <u>Unapproved Book Dealer (Claim 2)</u>

Moyston contends that the mailroom rejected the book received on March 31 because it did not come directly from an "approved" bookstore. Moyston quotes Beaudoin and Brooks as saying that books must come from "reputable" or "approved" bookstores, respectively. Capt. Cusson subsequently explained, in response to Moyston's grievance, that books need only come from bookstores recognizable or verifiable as such. Moyston has alleged that the book was out of stock at Barnes and Noble, and no other "reputable" bookstore source existed.

The four-factor test set forth in <u>Turner</u> applies in evaluating the validity of a jail regulation banning deliveries of books from sources other than publishers or bookstores. <u>See</u> <u>Turner</u>, 482 U.S. at 89-91. As to the first factor, a rational connection exists between the content-neutral rule and legitimate institutional interests. Books may be used to conceal contraband. <u>See</u> <u>Bell</u>, 441 U.S. at 550-51 (prison restriction limiting pretrial detainees' access to any hardbound books from sources other than publishers, bookstores, or book clubs was rationally related to legitimate purpose of maintaining prison security). The jail could reasonably conclude that the security risk and administrative burdens associated with accepting a book and screening it for contraband would be lower if the publisher or a verifiable seller of new books were the source. The First

15

Circuit, in an unpublished decision, upheld a similar policy,
resulting in the destruction of a 38-page computer print-out of
state laws mailed to an inmate, in part because that policy was
reasonably related to the facility's legitimate interest in
having staff avoid time-consuming searches of each page of
incoming publications.  See Starr v. Coulombe, 368 Fed. Appx. at
158.  Moyston has failed to allege any facts that distinguish the
policies in Bell and Coulombe from the policy applied here.

 HCDOC allows inmates to receive books directly from the
publisher and from any bookstore verifiable as such.  Barnes and
Noble is not the only verifiable bookdealer operating online.
Bookstores in the community may also take orders and mail out
books.  Inmates have access to the HCDOC law library.  Moyston
has not asserted that the book at issue was unobtainable from
such alternative sources.

 Moyston claims that the mailroom had the option of accepting
the book and sending it to inmate property instead of rejecting
it.  Moyston cites, in this regard, the experience of another
inmate whose book from an online bookdealer other than Barnes and
Noble was sent to property.  Moyston has not alleged facts
showing, however, that keeping books from sources that cannot be
verified as bookstores would avoid imposing substantial burdens
on the institution, including storage and screening costs
incurred to ensure institutional security.  Giving due deference

16

to the judgments of prison officials regarding such institutional matters, I conclude that the policy is reasonable and rationally related to the jail's legitimate, non-punitive, institutional interests.  Accordingly, I recommend dismissal of this claim.

II.  Access to Courts (Claim 3)

Moyston notes that a state court judge granted him "such access to the law library as he requires to prepare a defense for the pending charges."  Moyston maintains that Capt. Scurry disregarded that order by granting him only one extra day of library access per week (for a total of three per week), and by not granting him a fourth day.

Moyston's federal constitutional claim under 42 U.S.C. § 1983 is that the limitation on his access to the law library violated his right to access the courts.  Prisoners and pretrial detainees do not, in general, have a freestanding right to law library access or trained legal assistance.  See Bourdon v. Loughren, 386 F.3d 88, 92 (2d Cir. 2004) (citing Lewis v. Casey, 518 U.S. 343, 351 (1996)).  Rather, they have a constitutional right to access the courts, which affords them access to the tools necessary to challenge their criminal cases, convictions, and sentences directly or collaterally, to file habeas petitions, or to challenge the conditions of their confinement through civil rights actions.  See Lewis, 518 U.S. at 355; Bourdon, 386 F.3d at 92 & 95.

To prevail, the plaintiff must first show that the available legal resources, including the law library and other sources of legal information, taken as a whole, were inadequate to meet his need to conduct legal research, see Bounds, 430 U.S. at 832, and further prove that his legal status was harmed by a deprivation of legal materials.  See Lewis, 518 U.S. at 351.  Thus, in order to state a claim for denial of access to the courts under § 1983, a prisoner must allege that prison officials hindered his efforts to pursue a legal claim that he is constitutionally entitled to pursue during his incarceration.

As to the available legal resources, the "appointment of counsel can be a valid means of fully satisfying a state's constitutional obligation to provide prisoners, including pretrial detainees, with access to the courts."  Bourdon, 386 F.3d at 94.  A court may dismiss a claim of a denial of access to the courts, based on the provision of appointed counsel, notwithstanding the detainee's claim that appointed counsel has been ineffective.  See id. at 95-96 (dismissing detainee's section 1983 claim regarding adequacy of law library for purposes of preparing criminal defense, because detainee was represented by court-appointed counsel, notwithstanding detainee's contention that appointed counsel was ineffective).  The availability of standby counsel is similarly relevant in determining if the state has denied a pretrial detainee access to the courts.  See United

18

States v. Cooper, 375 F.3d 1041, 1052 (10th Cir. 2004) ("Standby counsel is the equivalent of library access."). Here, the state court, upon granting Moyston's motion to represent himself, directed that counsel remain involved in a standby capacity "to assist the defendant in the preparation and trial" of the pending criminal charges. Ex. A to Compl. (doc. no. 1-1). Moyston has not alleged facts to show that jail officials interfered in any way with his ability to obtain the assistance of counsel in connection with his motions and the November 2, 2009, hearing. In light of Moyston's status of having standby counsel available to help him, Moyston's claims regarding his lack of access to the courts should be dismissed.

## IV.  Retaliation (Claims 4-6)

To establish a First Amendment retaliation claim, a plaintiff must show:  (1) that he was engaged in activities protected by the First Amendment, (2) that the defendant took an adverse action against him, and (3) that there was a causal connection between the protected activity and the adverse action. See Cossette v. Poulin, 573 F. Supp. 2d 456, 459-60 (D.N.H. 2008).  The filing of a non-frivolous prison grievance under established prison grievance procedures, like the filing of an inmate lawsuit, is protected First Amendment activity.  See Haynes v. Stephenson, 588 F.3d 1152, 1155-56 (8th Cir. 2009); cf. Scott v. Stone, 254 Fed. Appx. 469, 472 (6th Cir. 2007) (filing

19

of "non-frivolous grievances" is protected conduct under First
Amendment).

The second element of a retaliation claim is that the
defendant took an adverse action against the plaintiff.  De
minimis reactions to protected speech will not satisfy that
requirement.  See Morris v. Powell, 449 F.3d 682, 685-86 (5th
Cir. 2006).  De minimis acts suffered by an inmate may include
those that impose only a "'few days of discomfort,'" "'a [single]
minor sanction,'" or an "otherwise constitutional restriction."
Starr v. Dube, 334 Fed. Appx. 341, 342 (1st Cir. 2009) (brackets
in original) (quoting Morris, 449 F.3d at 685-86).  Defendant's
response to plaintiff's protected speech is not de minimis,
however, if defendant's conduct would deter an individual of
ordinary firmness from exercising his or her First Amendment
rights.  See Morris, 449 F.3d at 686.  That standard involves an
objective inquiry, "capable of being tailored to the different
circumstances in which retaliation claims arise, and capable of
screening the most trivial of actions from constitutional
cognizance."  Thaddeus-X v. Blatter, 175 F.3d 378, 398 (6th Cir.
1999).

The third element of a retaliation claim is causation.
Although the plaintiff's burden at trial will be to prove that an
intent to retaliate was a "but-for" cause of the adverse action,
a lesser showing of a causal connection between retaliatory

content and adverse action will suffice to avoid dismissal of the complaint.  "[S]uch retaliatory intent typically is not susceptible to proof by direct evidence that can be averred in a complaint."  L'Heureux v. Whitman, 125 F.3d 841, at *1 (1st Cir. 1997) (per curiam) (unpublished decision) (citing McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979)).

   A.   Davine (Claim 4)

   In Claim 4, Moyston contends that Nancy Davine retaliated against him when she declined on one occasion to make copies of two state court cases in response to his request for those cases. Moyston requested copies of two cases on a Tuesday, December 1, 2009, several months after Davine had been served with a federal complaint filed by Moyston.  Defendant Nancy Davine effectively denied Moyston's copy request two days after he submitted it, stating that Moyston could research those cases in the law library.  Moyston's next library day was the following day, Friday, December 4.

   Whether or not Davine's conduct violated the HCDOC Pro Se Protocol regarding Moyston's access to library resources is not before me; only Moyston's retaliation claim is before me.  The allegations in the Complaint do not describe any conduct by Davine that could be characterized as more than de minimis.  An individual of ordinary firmness would not be deterred from filing a lawsuit against a jail official in the future by being put off

21

several days in having access to needed cases.  Moyston has not
alleged any facts suggesting that Davine had any reason to
believe that her response to his request would frustrate any time
sensitive need for the cases that Moyston might have had.
Accordingly, the claim against Davine should be dismissed.

    B.   <u>October 2009 Disciplinary Proceeding</u>

    Moyston claims that the sanction that he received on October
6, 2009, for pleading guilty to disciplinary charges was
retaliatory for his having filed a civil case against HCDOC.  The
sanction at issue was 30 days loss of law library privileges
excluding his pro se protocol library access, specifically
preserving his right to file inmate request forms for library
access.

    Moyston points to the sequence of events surrounding his
federal lawsuit against prison officials at HCDOC as proof that
his filing a federal lawsuit caused the hearing officer to deny
him library time in October 2009.  <u>See</u> <u>Moyston v. HCDOC</u>, No. 09-
CV-45-PB (filed March 31, 2009).  That chronology does not give
rise to a reasonable inference of a causal connection here,
however, as Moyston has alleged no facts suggesting that the
hearing officer who issued the sanction, defendant Fournier, was
even aware of the pending lawsuit, much less acting in response
to it.  <u>See</u> <u>Bibbs v. Early</u>, 541 F.3d 267, 274 (5th Cir. 2008) (no
causal connection where plaintiff failed to allege facts

suggesting that defendants were aware that plaintiff previously exercised First Amendment rights).  Accordingly, I recommend that the claim relating to the October 2009 disciplinary proceeding be dismissed.

      C.    <u>Abuse of Grievance Procedures</u>

          1.    <u>June 5, 2009 Disciplinary Proceeding</u>

Moyston claims that Capt. Scurry's filing of a disciplinary charge of abuse of the grievance process was retaliatory for a grievance Moyston filed on June 2 regarding his loss of library time on May 29 and June 1.  Scurry based the disciplinary charge on Moyston's filing a grievance after Moyston had agreed to Scurry's proposed resolution of making up the missing library days the next week.  The hearing officer, defendant Fournier, found Moyston guilty of the charge upon concluding that Moyston had filed a grievance regarding a matter that had been resolved. Moyston's sanction was the loss of one hour out of cell time each day for a week.  Moyston did not appeal the hearing officer's decision on the disciplinary charge.[3]  Moyston contends here that the charge and sanction he received were blatantly retaliatory for his having grieved the lost library days.

---

    [3]Moyston's failure to appeal that finding raises the issue of whether he has exhausted his administrative remedies, pursuant to 42 U.S.C. § 1997(e), as amended by the Prison Litigation Reform Act ("PLRA").  I take no position at this time on whether Moyston has complied with the PLRA, as that affirmative defense is not jurisdictional.

2.   <u>August 2009 Disciplinary Proceeding</u>

Moyston similarly asserts that he suffered retaliation when he was charged with and found guilty of two related charges -- disobeying a staff member and abusing grievance procedures -- in August 2009.  Moyston's claim is that the disciplinary charges and sanction were retaliatory for his filing a grievance regarding lost mail.

The factual allegations underlying this claim are as follows.  On June 8, 2009, defendant Superintendent O'Mara sent a letter to Moyston regarding his abuse of the grievance procedures, citing Moyston's filing more than thirty grievances in six months.  The June 8 letter states:

> This letter is intended to serve you notice that my employees will no longer be required to respond to grievances filed by you. . . . Therefore, unless the grievance you submit involves your personal safety, being in imminent danger, or you have an unaddressed serious medical need, do not anticipate a response from my staff.

On August 24, Moyston attempted to file a grievance to complain about lost mail.  Defendant Sgt. Gordon filed a report charging Moyston with disciplinary violations for seeking to grieve the lost mail.  Gordon interpreted O'Mara's letter as ordering Moyston to refrain from grieving matters not involving health and safety.  Gordon therefore charged Moyston with disobeying HCDOC staff and abusing the grievance procedures by grieving lost mail.  Moyston's defense was that Gordon

intentionally misrepresented the purpose of the letter, and that
the charges were therefore "false."  Moyston urged that the
letter be read as it is written, not barring grievances, but
avoiding the need for a staff response.  Hearing Officer
Fournier, accepting Gordon's interpretation of the letter, found
Moyston guilty.  Moyston's sanction was the loss of one hour of
out of cell time each day for ten days.

### 3.  Adverse Actions

A critical issue as to the claims relating to the abuse of
grievance procedure charges is whether the charges and sanctions
constituted adverse actions.  In Starr v. Dube, 334 Fed. Appx. at
342, the First Circuit considered a similar issue, whether a
disciplinary charge, dismissed by a hearing officer a week after
it was filed, was a de minimis response to the exercise of a
First Amendment right.  The charge in that case, like the charges
here, carried the threat of substantial penalties for a guilty
finding.  In that unpublished, per curiam decision, the First
Circuit in Starr v. Dube concluded that a single disciplinary
charge, dismissed a week after filing, was a de minimis act as it
would not deter an inmate of ordinary firmness from exercising
his First Amendment rights.  The First Circuit distanced itself
from cases from the Sixth, Eighth, and Tenth Circuit, in which
those courts held that filing retaliatory disciplinary charges
against a prisoner could constitute an adverse action.  See id.

25

(citing cases).  Those courts had reasoned that (1) the <u>de minimis</u> threshold was designed only to weed out inconsequential actions, and the risk of severe sanctions presented by a disciplinary charge was not inconsequential, <u>see</u> <u>Brown v. Crowley</u>, 312 F.3d 782, 789 (6th Cir. 2002); (2) prison officials have a high level of control over inmates' lives, and there is no guarantee that baseless charges will be dismissed, <u>Zarska v. Higgins</u>, 171 Fed. Appx. 255, 259-60 (10th Cir. 2006); and (3) a retaliatory filing of a disciplinary charge "strikes at the heart of an inmate's constitutional right to seek redress of grievances," <u>Dixon v. Brown</u>, 38 F.3d 379, 379 (8th Cir. 1994).

The First Circuit did not find the reasoning in those cases persuasive when applied to the facts in <u>Starr v. Dube</u>.  The record on appeal before the court demonstrated that prison disciplinary proceedings were designed to protect inmates from retaliatory disciplinary charges -- indeed, the plaintiff had succeeded in obtaining a dismissal -- and a defense to retaliatory charges would not be futile.  <u>See</u> <u>Starr v. Dube</u>, 334 Fed. Appx. at 342.

Similarly, in this case, Moyston had an opportunity to defend himself before a neutral factfinder as to each charge. While he did not succeed in avoiding guilty findings, the sanctions imposed were relatively minor, not severe.  No facts alleged in the complaint suggest that HCDOC disciplinary

26

procedures generally render defenses to retaliatory charges
futile.

The next issue is whether the sanctions imposed, the loss of
one hour of out of cell time for each of seven or ten days, would
chill an inmate of ordinary firmness from exercising his or her
right to grieve an issue.  The complaint does not allege any
facts suggesting how one hour less out of cell time for a week or
ten days would have more than a trivial impact on a person in
Moyston's circumstances.  Moyston, as a pretrial detainee,
lawfully incarcerated, may be expected to tolerate a level of
inconvenience exceeding that of the ordinary citizen.  See
Thaddeus-X, 175 F.3d at 398 ("Prisoners may be required to
tolerate more than public employees, who may be required to
tolerate more than average citizens, before an action taken
against them is considered adverse.").  A substantial impact
sufficient to chill an ordinary inmate's protected conduct is not
apparent from the facts alleged, as it might be in the case of a
sanction imposing a cell restriction of greater duration over a
longer time period.  See Hart v. Hairston, 343 F.3d 762, 764 (5th
Cir. 2003) (twenty-seven day cell restriction and loss of
commissary privileges was adverse act).  Where no physical
restraint, threat, or obvious discomfort is involved, courts have
found similar restrictions imposed for relatively short periods
of time to be de minimis.  Compare Gibbs v. King, 779 F.2d 1040,

27

1042, 1046 (5th Cir. 1986) (prisoner who suffered "minor sanction" of fourteen-day loss of store privileges failed to prove retaliatory harassment) with Bibbs v. Early, 541 F.3d 267, 272 (5th Cir. 2008) (question of material fact existed to preclude summary judgment on whether subjecting inmate to four nights of below freezing temperatures, affecting his sleep and causing cold symptoms, was de minimis).  In light of all of the facts alleged, I conclude that the sanction of one hour less out of cell time for a week or ten days is de minimis.  A reasonable fact finder could not find the sanction to be more than inconsequential in the context of a pretrial detainee's circumstances; the threat of such a minor sanction would not chill an ordinary inmate's exercise of a First Amendment right. Accordingly, the court should dismiss Moyston's claims relating to the disciplinary proceedings in June and August 2009.

IV.  Due Process Violation (Claim 7)

Moyston's next claim is that Sgt. Gordon violated his right to due process under the Fourteenth Amendment by filing a false disciplinary charge, which Moyston contends mischaracterized O'Mara's June 8 letter regarding Moyston's access to the grievance process.  "False accusations of misconduct filed against an inmate do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing."  Cromer v. Dominguez, 103 Fed.

28

Appx. 570, 573 (6th Cir. 2004); <u>see also</u> <u>Freeman v. Rideout</u>, 808
F.2d 949, 951 (2d Cir. 1986); <u>cf.</u> <u>Surprenant v. Rivas</u>, 424 F.3d
5, 13-14 (1st Cir. 2005) (pretrial detainee suffered due process
violation when false disciplinary charges led to immediate
punishment and loss of liberty, before hearing occurred).

Here, Moyston has not alleged any facts indicating that he
suffered any cognizable deprivation of a liberty interest.
Moreover, even if he were able to show that he had suffered a
violation of a liberty interest, he received the minimum
procedural due process protections guaranteed by the Fourteenth
Amendment.  <u>See</u> <u>Surprenant</u>, 424 F.3d at 16.  Moyston received
notice of the charges the day before the hearing; he presented a
defense in person, specifically challenging Gordon's
interpretation of O'Mara's letter; an impartial hearing officer
issued a written statement of reasons for the guilty findings;
and the hearing occurred before any sanction was imposed.
Therefore, the court should dismiss Moyston's due process claim
relating to Gordon's filing of charges against him.

V.   <u>Supervisory Liability</u>

"Supervisory liability under § 1983 cannot be predicated on
a respondeat theory, but only on the basis of the supervisor's
own acts or omissions."  <u>Aponte Matos v. Toledo Davila</u>, 135 F.3d
182, 192 (1st Cir. 1998) (internal quotation marks and citations
omitted).  A supervisor must be either "a primary actor involved

in, or a prime mover behind, the underlying violation." <u>Camilo-Robles v. Zapata</u>, 175 F.3d 41, 43-44 (1st Cir. 1999).  In other words,

> supervisory liability lies only where an affirmative link between the behavior of a subordinate and the action or inaction of his supervisor exists such that the supervisor's conduct led inexorably to the constitutional violation.  Further, supervisory liability under a theory of deliberate indifference will be found only if it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights.

<u>Maldonado v. Fontanes</u>, 568 F.3d 263, 275 (1st Cir. 2009) (internal quotations and citations omitted).  A supervisor is not deliberately indifferent, for purposes of § 1983 liability, if he or she is alleged merely to have been present for, or otherwise obtains knowledge of, the wrongdoing of a subordinate, or if the supervisor promulgated a policy that does not, on its face, direct or condone the wrongful conduct of subordinates.  <u>Id.</u>

Moyston alleges that O'Mara and Dionne are liable as supervisors for failing to protect Moyston in response to his filing grievances or appeals regarding the pertinent allegations in this action.  Furthermore, as to his claims regarding the rejected books, Moyston asserts that O'Mara is liable for promulgating the policies at issue.  The allegations in the Complaint (doc. nos. 1 an 4) fail to state any cognizable claim for relief under section 1983 as to Dionne or O'Mara based on their own conduct.  Because I have recommended dismissal of each

30

claim of a constitutional violation involving the policies at issue and the conduct of O'Mara and Dionne's subordinates, I similarly recommend dismissal of any claim pending against Dionne or O'Mara based on their supervisory or policy-making roles in connection with those claims.

Conclusion

All claims pending in the Complaint (doc. nos. 1 & 4) should be dismissed.

Any objections to this report and recommendation must be filed within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauth. Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

_____
Landya B. McCafferty
United States Magistrate Judge

Date:  September 28, 2010

cc:  Jerome Moyston, pro se

LBM:nmd